## Chicago, Burlington & Quincy R. R. Co. v. Samuel Yorty.

1. RAILROAD COMPANIES—*Frightening Horses.*—Where a railroad company employs a person to work with a team upon its right of way, and the character of the work required, and the proximity to passing trains, calls for more than usual care and watchfulness in the management of the team, this requires the employes of the company running trains to discharge their duties with additional care and so as not to expose such person to unnecessary damage.

**Memorandum.**—Action for frightening horses. In the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Declaration in case; plea, not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1894, and affirmed. Opinion filed December 13, 1894.

SAMUEL RICHOLSON, attorney for appellant; O. F. PRICE, of counsel.

O'CONOR, DUNCAN & HASKINS, attorneys for appellee.

MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This suit was brought by appellee to recover for injuries sustained by reason of his team becoming frightened at a passing freight train on appellant's railroad, and running over him, thereby breaking his leg.

The wrongful acts charged in the declaration, were the sounding of the locomotive whistle in such a loud, needless, wanton and malicious manner, and the causing of steam to be emitted from the steam chest and cylinder of the locomotive in such a needless, wanton and malicious manner as to frighten the plaintiff's team and render it unmanageable.

The case was tried by a jury and a verdict rendered in

favor of appellee for $3,000; there was a remittitur for $1,000 entered, whereupon the court overruled a motion for a new trial, and rendered a judgment for $2,000.

In seeking a reversal of the judgment appellant contends that there was no wrongful act or neglect of the defendant or its servants in charge of the train shown, and that appellant failed to exercise proper care and caution for his own safety.

The evidence shows that appellee was employed with his team and a scraper upon appellant's right of way, by one Hillenbrand, who had a contract for filling up under the railroad. The right of way at the place where the work was in progress, is fifty feet on each side of the track. It was the first day of appellee's employment. Several other men with their teams were upon the right of way engaged in the same work. As the freight train in question approached from the south, appellee went to the heads of his horses, to quiet and hold them until the train should pass. He and one other man with a team, were on the west side of the track. Two men, with teams were on the east side. About 500 feet south of this point is a whistling post for north bound trains, and about 1,000 feet north is what is known as the Bloomington or gravel road. When passing the whistling post the engine sounded the usual alarm. After the sounding of the whistle at that point, as the train approached, a man could be seen looking out of the window on the west side of the cab. When the engine got almost opposite to the men holding their teams the man withdrew his head from the cab window and immediately two or three sharp whistles such as are usually given to scare stock off the track, were sounded, steam was emitted violently from the escape pipe and appellant's horses, which up to that time had been quiet, became frightened and unmanageable, knocking appellee down, and rushed over him, breaking his leg near the hip joint. It was the engineer who caused the whistle to be sounded, and as he was on the right side of the cab, leaning out of the cab window, he was not in a position to see appellee and his horses. This fact, it is claimed,

refutes the idea that the whistle was blown in a reckless, wanton or malicious manner to frighten the horses. It is claimed, too, that inasmuch as the train was approaching a dangerous highway crossing, through a deep cut, the engineer was but performing a duty imposed by the law to give warning to travelers upon the highway.

The conditions were such as to impose upon appellee and the servants of appellant some additional care. The character of the work required of appellee, and the proximity of his team to passing trains, called for more than usual care and watchfulness in the management of his team. The danger and exposure incident to the particular work to which appellant had invited appellee, were such as to require the employes running trains to so discharge their duties as not to expose appellee and others working with him to unnecessary danger. If the train was approaching a highway crossing, and it was apparent that the law as to giving alarm could be complied with in such manner that appellee's team and others would not be frightened, then it was the duty of the engineer to perform that duty in such manner.

The evidence shows that appellee exercised all the care and watchfulness legally required under the circumstances. Two trains had passed on the same day of the accident while the horses were upon the work without frightening them. Appellee adopted the same plan of standing at their heads and quieting them that he had on the two occasions before. We entertain no doubt that the accident would not have occurred but for the sharp, shrill whistles of alarm given just as the engine reached the point where the horses stood. If the engineer was not in a position to see appellee, he was in a position to see the two men with their teams on the east side of the track. The danger to which they would be exposed by the character of the alarms given were apparent. The whistle had already been sounded at the whistling post 500 feet away, and the engine bell was being rung. To fulfill the statutory duty required at the approach of highway crossings did not call for the alarms which were given, right in the midst of several teams in plain view of

the engineer. The conduct of the engineer under the circumstances was reckless, wanton and willful.

We are of the opinion that the verdict of the jury is fully sustained by the evidence. We see no just cause of complaint against the ruling of the court on the admission of evidence or the giving of instruction. Judgment affirmed.